# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOSHUA MARSHALL,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>THE VILLAGE OF ISLAND LAKE, ILLINOIS, a municipal corporation; ANTHONY SCIARRONE; and BILLY DICKERSON,<br><br>　　　　　Defendants. | Case No. 18 C 8305<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joshua Marshall claims that when he worked for the Defendant Village of Island Lake's police department, Defendants Anthony Sciarrone and Billy Dickerson retaliated against Marshall for speaking out about corruption within the department. Defendants have moved to dismiss Marshall's Complaint on the grounds that Marshall failed to plead facts to state his federal claims, and that the Court should dismiss the remainder of his state law claims. For the reasons stated herein, Defendants' Motion to Dismiss (Dkt. No. 27) is granted in part and denied in part.

## I.　BACKGROUND

The Village of Island Lake, Illinois ("the Village") is a municipal corporation. (Compl. ¶ 7, Dkt. No. 1.) Plaintiff Joshua Marshall began working for the Village in November 2015. (Compl.

¶ 8.) During the times relevant to this suit, Defendant Anthony Sciarrone was the Village's Chief of Police, Defendant Billy Dickerson was a police sergeant, and Marshall was a police officer in training. (Compl. ¶¶ 4-6.) Marshall's precise employment status is somewhat unclear from the face of the Complaint—Marshall states that he was "a sworn Island Lake police officer," enrolled in the Village's "field training officer school," and on a "probationary period." (Compl. ¶¶ 8, 13, 15.) Dickerson was Marshall's supervisor. (Compl. ¶ 6.)

Around October 2016, Marshall learned that Dickerson was inflating his own pay by claiming he worked more hours than he actually did. (Compl. ¶ 11.) Marshall reported this activity to Sciarrone. (Compl. ¶ 12.) According to Marshall, shortly after making this complaint, and in retaliation for making the complaint, Dickerson removed Marshall from field training officer school. (Compl. ¶ 13.) Sciarrone and Dickerson then began "a campaign of harassment and retaliation" against Marshall, including opening an investigation into his conduct, accusing him of violating department rules, and threatening to prevent Marshall from completing his probationary period. (Compl. ¶¶ 14-15.)

The conflict among Marshall, Dickerson, and Sciarrone came to a head on December 8, 2017, when Marshall testified at a motion to suppress hearing involving a suspect, he had arrested a year

earlier. (Compl. ¶ 17.) When the prosecutor asked Marshall to identify the criminal defendant as the person Marshall had arrested a year earlier, Marshall testified that he could not identify the defendant as that person with 100 percent certainty. (Compl. ¶ 18.) That same day, Dickerson began an investigation into Marshall's testimony, and two weeks later, Dickerson recommended that Marshall be terminated for his testimony. (Compl. ¶ 20.) Sciarrone fired Marshall on December 20, 2017. Marshall believes this termination was in retaliation for having complained about Dickerson's time theft. Furthermore, Marshall alleges that after he was fired, Dickerson interfered with Marshall's ability to obtain new employment as a police officer, by making false and defamatory statements to a police department Marshall later applied to for employment. (Compl. ¶ 22.)

Marshall filed suit in December 2018. His Complaint sets forth five counts: (1) retaliation in violation of the First Amendment, under 42 U.S.C. § 1983; (2) violation of the Fourteenth Amendment right to due process, under 42 U.S.C. § 1983; (3) retaliation in violation of the Illinois Whistleblower Act, 740 ILCS 174/10 *et seq.*; (4) common law retaliatory discharge; and (5) common law defamation *per se*. Defendants now move the Court to dismiss Counts I, II, and V for failure to state a claim, and to decline to exercise supplemental jurisdiction over Counts III and IV, the

remaining state law claims. The Court will first address the federal claims before turning to the issue of whether to exercise supplemental jurisdiction, and finally, the Court will assess the defamation claim.

## II. **LEGAL STANDARD**

Dismissal for failure to state a claim under Rule 12(b)(6) is proper when "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual allegations must be enough to raise a right to relief "above the speculative level." *Twombly*, 550 U.S. at 555. In reviewing a plaintiff's claim, the court must construe all of the plaintiff's factual allegations as true and must draw all reasonable inferences in the plaintiff's favor. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). However, legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption. *Id*.

## III. **DISCUSSION**

### A. First Amendment Retaliation

Count I alleges that Defendants retaliated against Marshall for engaging in speech—the complaint to Sciarrone about

Dickerson's time theft—that is protected under the First Amendment. Defendants argue that Marshall cannot state a retaliation claim because when he complained about Dickerson's time theft, Marshall was acting in his official capacity as a government official.

The First Amendment generally prohibits government officials from dismissing or demoting an employee because the employee engaged in constitutionally protected political activity. *Heffernan v. City of Paterson, N.J.*, 136 S. Ct. 1412, 1416 (2016). To state a First Amendment retaliation claim, Marshall must allege that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity; and (3) the protected activity he engaged in was at least a motivating factor for the retaliatory action. *Archer v. Chisholm*, 870 F.3d 603, 618-19 (7th Cir. 2017) (citations omitted). Defendants assert that the first element—whether Marshall engaged in protected speech—is not met here because the speech in question was pursuant to his official duties as a public employee. When public employees make statements "pursuant to their official duties," the employees are "not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). The Supreme Court has held

that First Amendment protection for a public employee's speech turns on: (1) whether the employee spoke as a private citizen, (2) on a matter of public concern; and (3) if so, whether the governmental entity has offered an adequate justification for its decision to treat the employee differently from the general public. *Id*. at 418.

The parties dispute whether Marshall was speaking as a public official or private citizen. Defendants argue that Marshall was speaking pursuant to his official duties because he was a police officer reporting a theft (of time), and it is "axiomatic that part of a police officer's official duties is to act when there is a criminal violation of the law." (Defs.' Mot. at 5, Dkt No. 29.) Marshall urges that he was speaking as a private citizen about a matter of public concern: "misconduct by a public official." (Pl.'s Resp. at 4, Dkt. No. 31.) Marshall claims that as a police officer, his professional duties did not include reporting the misconduct of his supervisor, and as such, his complaints about Dickerson were made as a private citizen. (*See* Pl.'s Resp. at 5 ("In the ordinary course of a police officer's work, they are not involved in rooting out corrupt wage and hour practice by their supervisors. . . . Ferreting out internal corruption was presumably not in Marshall's job description . . . thus he was not acting as a police officer but as a concerned citizen when he reported Dickerson's

malfeasance.").) The Seventh Circuit has rejected this exact line of reasoning in *Kubiak v. City of Chicago,* 810 F.3d 476 (7th Cir. 2016), in which the court held that a government employee reporting misconduct does not speak as a private citizen merely because reporting misconduct is outside their typical duties:

> [Plaintiff] argues that as the public relations face of the Chicago Police Department, her professional duties did not include reporting misconduct of her coworkers, and as such, her complaints about [her fellow officer] were made as a private citizen. We disagree. [Plaintiff's] concept of "official duties" is overly narrow. As we explained in *Houskins,* an employee's official duties are not limited to the formal job description. [*Houskins v. Sheahan*, 549 F.3d 480, 490 (7th Cir. 2008).] We must make a practical inquiry into what Kubiak was expected to do as an employee. *See id.; Spiegla v. Hull*, 481 F.3d 961, 965–67 (7th Cir. 2007) (holding that a correctional officer spoke as an employee and not as a citizen when reporting supervisor's breach of prison security even though the officer's primary responsibility was to monitor vehicle and foot traffic through the main gate). Generally, an employee who is verbally assaulted by a colleague would be expected to report the inappropriate behavior to a supervisor.

*Kubiak*, 810 F.3d at 481-82; *see also Vose v. Kliment*, 506 F.3d 565, 570 (7th Cir. 2007) ("[Plaintiff] may have gone above and beyond his routine duties by investigating and reporting suspected misconduct in another police unit, but that does not mean that he spoke as a citizen and not as a public employee."). Additionally, as Defendants pointed out, it makes sense to expect police officers

to report a fellow officer's misconduct. *See Kubiak*, 810 F.3d at 482. Marshall was a police officer, and as part of that job, he was responsible for upholding the law, even if the law at issue here was not one an officer typically has a role in enforcing. *See id*. Marshall has not pled any facts that would indicate he was not expected to report corruption when he saw it; thus, he has failed to plead facts that would indicate he was speaking as a private citizen.

Furthermore, Seventh Circuit caselaw indicates that if an employee reports misconduct in the manner directed by official policy, to a supervisor, or to an external body with formal oversight responsibility, then the employee speaks pursuant to his official duties and his speech is unprotected. *See Spalding v. City of Chicago*, 24 F. Supp. 3d 765, 776 (N.D. Ill. 2014) (collecting cases). By contrast, if the employee testifies about misconduct, or reports misconduct "outside established channels or in violation of official policy," he speaks as a private citizen and his speech is constitutionally protected. *See id*. Marshall has not pled any facts that would indicate whether or not the Village's policy requires officers to report internally misconduct by other officers. However, the fact that Marshall reported the misconduct to the Chief of Police rather than to an outside entity strongly suggests that he was speaking within the scope of his job duties.

*See Tamayo v. Blagojevich*, 526 F.3d 1074, 1091 (7th Cir. 2008) ("Following *Garcetti,* other courts have determined that reports by government employees to their superiors concerning alleged wrongdoing in their government office were within the scope of their job duties, and, therefore, the employees were not speaking as private citizens.").

Therefore, even construing the factual allegations as true and drawing all reasonable inferences in Marshall's favor, the Court must conclude that Marshall's speech was made as a public employee and not as a private citizen. Thus, the Court need not advance to the next inquiry, whether Marshall's speech was on a matter of public concern. This Count is dismissed without prejudice.

**B. Fourteenth Amendment Due Process**

Count II of the Complaint alleges that Defendants violated Marshall's right to due process under the Fourteenth Amendment by damaging his ability to obtain future employment as a police officer. Defendants argue that Marshall cannot plead a due process claim because, as a "probationary officer," he had no legitimate claim to continued employment at the Village police department.

There are two types of due process claims: procedural and substantive. *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998). Substantive due process concerns whether the government

has an adequate reason for taking away a person's life, liberty, or property. *See* U.S. Const. amend. XIV § 1 ("nor shall any State deprive any person of life, liberty, or property, without due process of law"); *Belcher v. Norton*, 497 F.3d 742, 753 (7th Cir. 2007). Procedural due process concerns whether the government has followed adequate procedures in taking away a person's life, liberty, or property. See *Belcher*, 497 F.3d at 750. Marshall did not specify which type of claim he is pursuing in his Complaint, but he states in his response brief that he only alleges a procedural due process claim.

For procedural due process claims, the court must determine whether the plaintiff has been deprived of a protected interest in property or liberty. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). Only after finding the deprivation of a protected interest does the court look to see if the government's procedures comport with due process. *Id.* On the subject of whether Marshall asserts a property or liberty interest, as elsewhere in the briefing, Plaintiff and Defendants talk past each other. Defendants argue that Marshall does not have a property interest in continued employment with the Village because he was a "probationary" officer. Marshall counters that he is not claiming a property interest in his former job, but rather a liberty interest in maintaining his chosen profession—known as an

"occupational liberty" claim. *See Hinkle v. White*, 793 F.3d 764, 767 (7th Cir. 2015). The Complaint creates confusion on this subject by stating that Marshall has "a liberty *and/or property* interest in pursuing an occupation of his choice" (Compl. ¶ 29 (emphasis added)); however, it also states several times that Marshall's due process concern relates to his ability to obtain future employment. (*See* Compl. ¶¶ 28-32.) Thus, it appears to the Court that Marshall was attempting to plead an occupational liberty claim. Defendants' motion to dismiss did not present an argument against an occupational liberty claim, but the Court will address *sua sponte* how Marshall has failed to plead such a claim.

To plead an occupational liberty claim, Marshall must show: (1) he was stigmatized by the defendant's conduct, (2) the stigmatizing information was publicly disclosed and (3) he suffered a tangible loss of other employment opportunities as a result of public disclosure. *Townsend v. Vallas*, 256 F.3d 661, 669-70 (7th Cir. 2001). The Seventh Circuit has also noted that to state such a claim, the "circumstances of the discharge, at least if they were [publicly] stated, had the effect of blacklisting the employee from employment in comparable jobs." *Id*. (quoting *Colaizzi v. Walker*, 812 F.2d 304, 307 (7th Cir. 1987)). The Seventh Circuit calls this a "stigma-plus" analysis:

> [E]ven assuming [the government] harmed [plaintiff's] reputation, mere defamation by the government does not

> deprive a person of "liberty" protected by the Fourteenth Amendment, even when it causes serious impairment of one's future employment. Rather, it is only the alteration of legal status, such as government deprivation of a right previously held, which, combined with the injury resulting from the defamation, justifies the invocation of procedural safeguards. Thus, we conduct a "stigma-plus" analysis to determine whether there was an injury to reputation along with a change in legal status.

*Hinkle*, 793 F.3d at 767-68 (citations, brackets, and internal quotation marks omitted).

Marshall argues that his due process claim is supported by his allegations that Defendants fired him and subsequently defamed him to a prospective employer. (*See* Compl. ¶¶ 31-32, 47 ("[T]he arbitrary and false actions and injurious statements of [Defendants] did and will continue to cause Plaintiff to be unable to pursue an occupation in law enforcement or other public service"; "Dickerson made false and defamatory comments regarding Plaintiff's fitness to serve as a police officer to at least one other police department.") This is insufficient to plead an occupational liberty claim under the "stigma-plus" standard, as "simply labeling an employee as being incompetent or otherwise unable to meet an employer's expectations does not infringe the employee's liberty." *Head v. Chicago Sch. Reform Bd. of Trustees*, 225 F.3d 794, 801 (7th Cir. 2000) (citation omitted). Marshall has pled no facts that indicate Defendants called his integrity into

question in such a way as to make it "virtually impossible" for him to find new employment in his chosen field. *Id*. Indeed, the Seventh Circuit has held that when the liberty interest at issue is "occupational liberty," "mere defamation coupled with a firing is not sufficient to state such a claim." *Townsend*, 256 F.3d at 670 n.9 (citing *Colaizzi*, 812 F.2d at 307). This is exactly what Marshall pleads at this point. Thus, this count is dismissed without prejudice.

### C. Jurisdiction Over State Law Claims

Having ruled on the First and Fourteenth Amendment claims, the Court has dismissed both of the federal claims from this lawsuit. Defendants urge that in this scenario, the Court should dismiss the remaining state law claims under 28 U.S.C. § 1367(c)(3). The federal supplemental jurisdiction statute provides that a district court "may decline to exercise supplemental jurisdiction" over state-law claims if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Although this decision is discretionary, "when all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Mgmt. Co. v. BP Prod. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (quoting *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d

720, 727 (7th Cir. 2010)). The presumption is rebuttable, "but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *Id*.

However, the federal claims in this case have thus far only been dismissed without prejudice, and the Court will grant Marshall an opportunity to amend his Complaint to cure the present pleading deficiencies. *See Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008) ("District courts routinely do not terminate a case at the same time that they grant a defendant's motion to dismiss; rather, they generally dismiss the plaintiff's complaint without prejudice and give the plaintiff at least one opportunity to amend her complaint."). If Marshall does not file an amended complaint, or if he does and the federal claims continue to fail to state a viable claim, the Court will revisit the issue of whether to relinquish jurisdiction over the remaining state law claims.

### D. Defamation *Per Se*

As noted above, Count V alleges that Dickerson "made false and defamatory [*per se*] comments regarding Plaintiff's fitness to serve as a police officer to at least one other police department where Plaintiff applied for employment after Plaintiff was fired by the Village." (Compl. ¶ 47.) Defendants argue that this count

must be dismissed because Marshall failed to specify the defamatory comments at issue.

An Illinois defamation action may state a claim either for defamation *per se* (statements so harmful to reputation that damages are presumed) or defamation *per quod* (statements requiring extrinsic facts to show their defamatory meaning). *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 924 (7th Cir. 2003) (citing Illinois caselaw). In a *per se* action, a plaintiff may recover only if the defendant's actions fit into certain limited categories, one of which is "words that prejudice a party in her trade, profession, or business." *Id*. Defendants, citing to Illinois caselaw, contend that Marshall "must allege with specificity the claimed defamatory statements so the statements can be properly analyzed under Illinois law." (Defs.' Mot. at 7.)

However, Defendants misstate the law when they contend that "a defamation plaintiff fails to satisfy the requirements of notice pleading unless he specifically states the words alleged to be actionable." (Defs.' Reply at 3, Dkt. No. 32.) It is true that *Illinois* courts subject claims of defamation to specific pleading requirements. *Green v. Rogers*, 917 N.E.2d 450, 459-61 (Ill. 2009) ("Although a complaint for defamation *per se* need not set forth the allegedly defamatory words [*verbatim*], the substance of the statement must be pled with sufficient precision and particularity

so as to permit initial judicial review of its defamatory content. … Like a common law fraud claim, a defamation *per se* claim must be pled with a heightened level of precision and particularity."). However, the Seventh Circuit has made clear that when a plaintiff files a claim in federal court asserting defamation *per se* under Illinois law, such a claim is governed by the federal notice pleading rule, not the Illinois pleading rule. *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 926 (7th Cir. 2003) ("[T]he Illinois pleading rule… of course does not apply in federal court."); *see also Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 903 (7th Cir. 2007) ("[T]he heightened pleading standard that the Illinois courts use does not apply in federal court to a claim of defamation *per se*.").

Accordingly, the Court must consider whether Marshall's defamation claim satisfies the notice pleading requirements of Federal Rule of Civil Procedure 8. Rule 8 requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the notice pleading standard, specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). In the context of a defamation claim, Rule 8 "does not require that the complaint recite verbatim the

allegedly defamatory statement." *Rivera v. Allstate Ins. Co.*, 140 F. Supp. 3d 722, 728 (N.D. Ill. 2015) (collecting cases).

Marshall's description of the basis of his defamation claim is quite sparse: "[A]fter Plaintiff was fired, Dickerson… [made] false and defamatory statements to at least one police department where Plaintiff applied for employment regarding Plaintiff's fitness to serve as a sworn police officer." (Compl. ¶¶ 22.) Marshall thus indicates who was speaking (Dickerson) and what made the statements defamatory (that Marshall was unfit to serve as a police officer), but he does not indicate when this took place (other than the fact that it was after Marshall was fired and before he filed his Complaint) or to whom the statements were made (which is odd, given that Marshall should know to which police departments he applied). This barely surpasses the notice pleading standard, but ultimately, it is sufficient to make Defendants aware of the basis for Marshall's defamation claim. *See Erickson*, 551 U.S. at 93; *see also Rivera*, 140 F. Supp. 3d at 728 (under Rule 8, a defamation plaintiff need not plead "the exact words allegedly defaming plaintiff, or the precise occasions on which those statements were made, or to whom they were made") (quoting *Wuchenich v. Shenandoah Mem'l Hosp.*, 215 F.3d 1324, 2000 WL 665633, at *14 (4th Cir. 2000) (citable pursuant to 4th Cir. R. 32.1)).

Further details can be developed in discovery. Thus, Defendants' motion to dismiss the defamation count is denied.

## IV. CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss (Dkt. No. 27) is granted in part and denied in part. Marshall's First Amendment retaliation and Fourteenth Amendment due process claims (Counts I and II) are dismissed without prejudice; his defamation claim (Count V) stands.

**IT IS SO ORDERED.**

                                                                    Harry D. Leinenweber, Judge
                                                                    United States District Court

Dated: 8/13/19