IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSHUA MARSHALL<br><br>        Plaintiff,<br><br>    v.<br><br>The VILLAGE OF ISLAND LAKE, Illinois, a municipal corporation, ANTHONY SCIARRONE, and BILLY DICKERSON,<br><br>        Defendants. | Case No. 18 cv 8305<br><br>Judge Harry D. Leinenweber |

### MEMORANDUM OPINION AND ORDER

Plaintiff Joshua Marshall brings this action under 42 U.S.C. § 1983 against the Village of Island Lake and individual officers Anthony Sciarrone and Billy Dickerson, alleging violations of his First and Fourteenth Amendment rights. (Dkt. No. 35.) Marshall also brings state law claims of violations under the Illinois Whistleblower Act, retaliatory discharge, and defamation *per se*. (*Id.*) Both Island Lake and the individual officers have moved for summary judgment on all counts. (Dkt. Nos. 76, 79.) For the reasons set forth below, Defendant's motion for summary judgment is granted in part. Plaintiff's remaining state law claims are remanded to the Cook County Circuit Court.

### I. BACKGROUND

On July 8, 2016, Plaintiff began working as a full-time, albeit probationary, police officer for the Village of Island Lake.

(Pl.'s Resp. to Def. Island Lake's Stmt. of Facts ("PILSOF") ¶ 1, Dkt. No. 85.) At the time, Defendant Dickerson was the administrative sergeant, and Defendant Sciarrone was the chief of police (collectively, the "Individual Defendants"). (Pl.'s Resp. to Indiv. Def. Stmt. of Facts ("PIDSOF") ¶¶ 2—3, Dkt. No. 87.) Starting in October of 2016, Plaintiff began to believe that Dickerson was being paid for hours that he did not work. (PILSOF ¶ 3.) Plaintiff observed that Dickerson was often late to roll call. (Def. Island Lake's Resp. to Pl.'s Stmt. of Facts ("DILSOF") ¶ 1, Dkt. No. 89.) Dickerson's tardiness was witnessed by other police officers as well, with one officer stating that Dickerson was late "as a rule." (Indiv. Defs.' Resp. to Pl.'s Stmt. of Facts ("IDSOF") ¶ 2, Dkt. No. 91). Plaintiff claims that he kept a journal containing evidence that Dickerson was being paid for time he did not work. (PILSOF ¶ 4.) Plaintiff told coworkers about this journal but did not give copies of it to anyone and threw it away after his termination from the police force. (*Id.* ¶¶ 4—6). Plaintiff complained about Dickerson's behavior to his union representative and to Sciarrone. (*Id.* ¶¶ 7,9.) At the time of these complaints, Plaintiff was vice president of his union. (*Id.* ¶ 8.) Shortly after Plaintiff's complaints, Sciarrone ordered an investigation of Plaintiff. (IDSOF ¶ 12.)

On December 8, 2017, Plaintiff testified at a hearing for a motion to suppress stemming from a DUI arrest Plaintiff made.

(PIDSOF ¶ 8.) At the hearing, Plaintiff was asked to review a video of the arrest and identify the criminal defendant. (PILSOF ¶ 11.) Plaintiff testified that he could not identify the criminal defendant with 100% certainty. (*Id.* ¶ 12.) As a result, the case resulted in a nolle prosequi. (*Id.* ¶ 13.) After the hearing, Jean Butler, the Village's prosecutor, called Dickerson and Sciarrone and informed them of her dissatisfaction with Plaintiff's failure to identify the criminal defendant. (*Id.* ¶ 14.) After speaking with Butler, Sciarrone and Dickerson decided to investigate the incident. (*Id.* ¶ 15.) Based on their investigation, Dickerson and Sciarrone recommended that Plaintiff be terminated. (PILSOF ¶ 20.) Dickerson wrote a report memorializing the investigation, which was provided to the Board of Fire and Police Commissioners. (PIDSOF ¶ 15—16.) Plaintiff alleges that the report contained several inaccurate reasons as to why he was fired. (IDSOF ¶ 21—24). First, that he failed to adequately prepare for the hearing. (*Id.* ¶ 21). Second, that he failed to provide a *Brady* memo. (*Id.* ¶ 22.) Third, that he missed court appearances without permission. (*Id.* ¶ 23.) Fourth, that he gave false testimony at the December 8, 2017, hearing. (*Id.* ¶ 24.) The Defendants disagree with Plaintiff's characterization, alleging that everything written in the letter was true. (*Id.* ¶¶21—24; DILSOF ¶¶21—24.) Plaintiff also alleges that he was fired for complaining about Dickerson's time theft. (PILSOF ¶ 20.)

According to Dickerson, Plaintiff would have successfully completed his probationary period but for his testimony at the December 8, 2017, hearing. (IDSOF ¶ 18.) However, Dickerson also admitted that one of the reasons he recommended that Plaintiff be fired was because of Plaintiff's complaints. (*Id.* ¶ 33.)

Plaintiff alleges that after he was fired, Dickerson and Sciarrone made false and defamatory statements to another police department where Plaintiff applied for a position. (PILSOF ¶ 25.) Plaintiff applied to the Wauconda police department and Sciarrone and Dickerson met with Wauconda police representative. (IDSOF ¶ 51). At the meeting, Sciarrone told the representative that Plaintiff had a "problem." (*Id.*) Sciarrone and Dickerson also showed, but did not provide a copy of, Dickerson's report, which contained the claims that Plaintiff alleges are false. (*Id.*)

On December 18, 2018, Plaintiff filed suit. (Dkt. No. 1). On April 1, 2019, the Defendants filed a motion to dismiss the complaint. (Dkt. No. 27.) This Court granted the motion, in part, on August 13, 2019. (Dkt. No. 34.) As a result, Plaintiff filed an amended complaint on August 28, 2019. On September 27, 2021, the Village of Island Lake filed a motion for summary judgment. (Dkt. No. 76.) On September 29, 2021, Defendants Dickerson and Sciarrone did the same. (Dkt. No. 79.)

II. **LEGAL STANDARD**

Summary judgment is appropriate if there is "no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The relevant substantive law governs whether a fact is material. *Id.* When reviewing the record on a summary judgment motion, the Court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). If, however, the factual record cannot support a rational trier of fact to find for the nonmoving party, summary judgment is appropriate. *Id.* at 380.

### III. DISCUSSION

**A. First Amendment Retaliation**

Plaintiff's first claim is that Defendants unlawfully retaliated against him for exercising his First Amendment rights, in violation of 42 U.S.C § 1983. To prevail on a First Amendment retaliation claim, a plaintiff must prove that (1) he engaged in protected First Amendment speech, (2) an adverse action was taken against him, and (3) the protected conduct was a motivating factor of the adverse decision. *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020). When, as here, the plaintiff is a public employee, his speech is protected only under specific circumstances. *Swetlik*

v. *Crawford*, 738 F.3d 818, 825 (7th Cir. 2013) Plaintiff must show that the speech was made as a private citizen, addressed a matter of public concern, and that the plaintiff's interest in the speech was not outweighed by the state's interest as an employer in promoting "effective and efficient public service." *Id.* (quoting *Houskins v. Sheahan*, 549 F.3d 480, 490 (7th Cir. 2008)).

This Court already considered Plaintiff's First Amendment claim on a motion to dismiss. In Plaintiff's original complaint, Plaintiff alleged that he engaged in protected speech when reporting Dickerson's alleged time theft to Sciarrone. This Court dismissed the claim, finding that Plaintiff's complaint failed to meet the first requirement of protected speech as a public employee, that the speech was made as a private citizen. *Marshall v. Village of Island Lake, Illinois*, 2019 WL 3801863 at *3 (ND. Ill. 2019). The Court based its decision on *Bivens v. Trent*, 591 F.3d 555, 560 (7th Cir. 2010). In *Bivens* the Seventh Circuit held that an officer's complaints made up the chain of command are not protected by the First Amendment. *Id.* The Seventh Circuit has also held that public employees who report workplace wrongdoing to their supervisors are not speaking as private citizens. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1091—92 (7th Cir. 2008).

In his amended complaint and in the subsequent discovery process, Plaintiff established that he also reported Dickerson's behavior to his union representative. At summary judgment,

Defendants again challenge whether this constitutes protected speech under the First Amendment. Defendants argue that Plaintiff was still not speaking as a private citizen when he spoke to his union representative.

Speech made pursuant to an employee's official duties is not considered speech made by a private citizen. *Garcetti v. Ceballos*, 547 U.S. 410, 421—22 (2006). The Seventh Circuit has held that when a public employee speaks in his capacity as a union official, he is not speaking as a public employee. *See Olendzki v. Rossi*, 765 F.3d 742, 747 (7th Cir. 2014); *Swetlik* 738 F.3d at 826 (an officer spoke as a private citizen when submitting a grievance about the police chief to the union.); *Nargle v. Village of Calumet Park*, 554 F.3d 1106, 1123 (7th Cir. 2009) (an officer spoke as a private citizen when he attended a union meeting and expressed concerns about the chief of police.). However, communications by union officials are not automatically protected by the First Amendment. *Olendzki*, 765 F.3d at 747. Similarly, courts in this district have held that employees who are not union officials are not automatically speaking as private citizens when they repeat a complaint to their union representative. *Bryant v. Gardner*, 587 F.Supp.2d 951, 962 (ND. Ill. 2008); *Smith v. Illinois School District U-46*, 120 F.Supp.3d 757, 774 (ND. Ill.2015).

Here, Plaintiff was the vice president of his union. However, Plaintiff does not argue that he made his complaint to his union

representative in his capacity as the union vice president. Instead, Plaintiff argues that his speech was protected by the First Amendment because he spoke outside of official channels. Plaintiff relies on *Spalding v. City of Chicago*, 186 F.Supp.3d 884 (ND. Ill. 2016). In *Spalding*, the district court held that an officer spoke as a private citizen when making reports to the FBI about illegal activity in the police department. *Id.* at 903. The Court is not persuaded by Plaintiff's argument. The *Spalding* court held that Plaintiff spoke as a private citizen when reporting misconduct to an outside agency. *Id.* Other courts in this district have made similar rulings. *See e.g., Conway v. City of Chicago*, 2021 WL 4206793 at *6 (ND. Ill. 2021); *Parker v. Harper*, 2018 WL 3740617 at *5 (ND. Ill. 2018); *Sorescu v. Harper*, 2017 WL 1927696 at * 6 (ND. Ill. 2017). None of these cases involved speech made to a union representative. In cases involving unions, the relevant fact is whether the plaintiff was speaking as a union member. *Rossi*, 765 F.3d at 747; *Balder v. Meeder*, 2022 WL 2340874 at *4 (ND. Ill. 2022). Here, Plaintiff has not argued or presented facts to support that he spoke to his union representative in his capacity as the union vice president. As such, the Court finds that the Plaintiff has not satisfied the elements of a First Amendment retaliation claim. The Court grants summary judgment to all Defendants on this claim.

**B. Fourteenth Amendment Due Process**

Plaintiff's second claim is that all Defendants deprived him of his occupational liberty interest to pursue his career as a police officer. Plaintiff has withdrawn this claim against all Defendants. (Resp to Def. Island Lake. at 15 n. 3, Dkt No. 84 ("Marshall also withdraws his Due Process Liberty interest in Count II of his Amended Complaint."), Resp to Indiv. Def. at 12 n. 2, Dkt. No. 86 ("Plaintiff withdraws his Due Process Occupational Liberty Claim in Count II of his Amended Complaint.").) The Court grants summary judgment to all Defendants on this claim.

**C. State Law Claims**

Plaintiff's final three claims, violations of the Illinois Whistleblower Act, retaliatory discharge, and defamation *per se* are all Illinois state law claims. The Court must now examine whether it still has jurisdiction over these claims. When this case was filed, this Court had supplemental jurisdiction over Plaintiff's state law claims because they were intertwined with Plaintiff's federal law claims. 28 U.S.C. § 1367 (a). A federal court may decline to exercise supplemental jurisdiction over a claim when it dismisses all the claims over which it has original jurisdiction. *Id.* at (c)(3). A court's decision to hear the claims it has supplemental jurisdiction over is discretionary. *Id.* However, when all the claims that a court has original jurisdiction

over are dismissed before trial, "the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Mgmt. Co. v. BP Prod. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (quoting *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010)). The Seventh Circuit has explained that there are certain circumstances that may displace the presumption. *Id.* at 480. The Court finds that none of those circumstances are present here. Now that the Court has dismissed the federal law claims, it finds that Illinois state courts are better suited to hear the remaining state law claims. Therefore, Plaintiff's remaining three claims are remanded to the Cook County Circuit Court for further proceedings.

## IV. CONCLUSION

For the reasons stated herein, Defendants motions for summary judgment are granted as to Counts I and II. Counts III, IV, and V are remanded to the Cook County Circuit Court for further proceedings.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: 9/28/2022